IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| KAREN FARMER, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 13-cv-511-TLW |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) ) ) ) ) | |
| Defendant. | ) | |

### OPINION AND ORDER

Plaintiff Karen Farmer seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claims for disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), and Fed. R. Civ. P. 73, the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 12). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

### INTRODUCTION

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if

the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

**BACKGROUND**

Plaintiff, then a forty-seven year old female, completed her applications for Titles II and XVI benefits on October 4, 2010. (R. 131-32). Plaintiff alleged a disability onset date of August 10, 2010. (R. 131). Plaintiff claimed that she was unable to work due to symptoms and limitations associated with fibromyalgia. (R. 190). Plaintiff's claims for benefits were denied initially on January 14, 2011, and on reconsideration on March 10, 2011. (R. 63-66; 68-80). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held the hearing on February 13, 2012. (R. 24-46). The ALJ issued a decision on March 28, 2012, denying benefits and finding plaintiff not disabled because she was capable of performing past relevant work. (R. 8-23). The Appeals Council denied review, and plaintiff appealed. (R. 1-5; Dkt. 2).

**The ALJ's Decision**

The ALJ found that plaintiff had not performed any substantial gainful activity since her alleged onset date of August 10, 2010. (R. 13). At step two, the ALJ found that plaintiff had the severe impairments of fibromyalgia and obesity. Id. After analyzing the "paragraph B" criteria for mental impairments, the ALJ determined that plaintiff's "medically determinable mental impairments" were non-severe because they caused no more than a minimal limitation in her ability to function in a work setting. (R. 13-14).

At step three, the ALJ determined that plaintiff's impairments did not meet or equal a listed impairment. (R. 15). Therefore, after reviewing plaintiff's testimony, the medical evidence, and other evidence in the record, the ALJ concluded that plaintiff retained the RFC to:

> occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for at least 6 hours out of an 8-hour workday; sit for at least 6 hours out of an 8-hour workday (all with normal breaks); and no more than occasionally climb such things as ramps or stairs, balance, stoop, kneel, crouch, or crawl (Light work is defined in 20 CFR 404.1567(b) and 416.967(b)).

(R. 15). At step four, the ALJ found that plaintiff was capable of performing her past relevant work as a waitress, a cashier, or a store manager. The ALJ did not make an alternative step five finding. Because he found that plaintiff could return to her past relevant work, the ALJ determined that she was not disabled. (R. 19).

## ANALYSIS

On appeal, plaintiff raises three issues: (1) that the ALJ failed to properly consider the medical source opinions; (2) that the ALJ failed to properly consider plaintiff's credibility; and (3) that the ALJ's RFC assessment is not supported by substantial evidence.[1] (Dkt. 19 at 4). The Court will address plaintiff's credibility complaints first because the second issue is affected by the ALJ's credibility finding.

**Credibility**

Plaintiff argues that the ALJ failed to assess properly her credibility by taking evidence out of context and by relying solely on minimal objective findings. (Dkt. 19). The Commissioner responds that the ALJ properly discounted plaintiff's credibility because her subjective complaints were not borne out by objective medical findings. (Dkt. 20).

---

[1] Plaintiff does not develop an argument for this allegation of error, so it will not be considered by the Court. See (Dkt. 19 at 4-9).

This Court is not to disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (citing Diaz v. Secretary of Health & Human Svcs., 898 F.2d 774, 777 (10th Cir. 1990)). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (citing Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)). The ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

After summarizing the regulations regarding credibility analyses (R. 16), the ALJ summarized plaintiff's testimony,

> The claimant testified at the hearing that she was let go from her job because she "started going to all these doctors." She stated that she has extreme pain in her legs and if she walks too far, they collapse. The claimant testified that she has back pain and it feeling [sic] like her skin is burning. She stated that she is weak and tired all the time and sometimes cannot lift anything. The claimant testified that she can stand for about 4 minutes then has to sit down. She stated she has difficulty walking because her legs shake. The claimant testified that she spends most of the day sitting and sleeping in a recliner. She stated that her husband does most of the household chores and shopping. The claimant testified that her husband got her a laptop and she reads. She stated that she cannot remember things and has problems writing.

Id. Next, the ALJ noted that the Tenth Circuit recognizes fibromyalgia as a disease with no "dipstick" laboratory test. Id. (referencing Sisco v. U.S. Department of Health and Human Services, 10 F.3d 739 (10th Cir. 1993)). He also noted that in 1990, the American College of Rheumatology established classification criteria for a diagnosis of fibromyalgia "requiring pain

4

in eleven (11) of eighteen (18) tender point sites on digital palpation." (R. 16). The ALJ said that his review of plaintiff's fibromyalgia included an evaluation of the credibility of her hearing testimony relating to the performance of work related functions. Id.

The ALJ briefly discussed plaintiff's medical records and used that discussion to determine the following regarding her credibility:

> The medical evidence shows that although the claimant alleges disabling pain, her physical examinations have revealed *minimal objective findings* other than occasional swelling in her ankles and tenderness in some joints. The claimant has had full strength in all extremities and full range of motion of her spine and hips (Exhibits 1F, 2F, 3F, and 6F). This inconsistency reduces the claimant's credibility.

(R. 18) (emphasis added). The ALJ referred to plaintiff's original function report, dated October 15, 2010, to further discredit her testimony and declare that her reported activities such as "relax[ing] on the couch for an hour or so," doing some light housework," including laundry and dishes, and a statement to Dr. Fesler that she was slowly decorating cakes, as evidence that plaintiff could perform "light work activity." Id. The ALJ also said that plaintiff's credibility was further diminished because she received unemployment for the last two quarters of 2010. Id. Further, the ALJ noted that plaintiff's "treating physicians did not place any functional restrictions on her activities that would preclude light work activity with the previously mentioned restrictions." (R. 19).

An illustrative list of factors for the ALJ to consider in assessing credibility is set forth in Luna v. Bowen, 834 F.2d 163-66 (10th Cir. 1987) and Huston, 838 F.2d at 1132 n.7. Those factors include medication, attempts to seek treatment, daily activities, the consistency of the medical evidence and plaintiff's testimony, relationships and motivation of the witnesses, and other subjective factors within the ALJ's discretion. See Huston, 838 F.2d at 1132 n. 7. The ALJ must link his credibility findings to the evidence. See Kepler, 68 F.3d at 291. However, the ALJ

5

is not required to conduct a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2004).

Here the ALJ appears to focus his credibility determination on his own assumptions rather than the results of a Luna analysis of plaintiff's pain in conjunction with her severe impairment of fibromyalgia. The ALJ consistently pulled evidence out of context to minimize plaintiff's pain complaints and show that her pain was not disabling. See (R. 18-19).

For example, plaintiff's original Function Report, upon which the ALJ relied to support his finding that plaintiff could perform light work, shows more limitation than the ALJ stated. While the ALJ noted that plaintiff's reported activities were "relaxing on the couch …, some light housework, [and] vacuum[ing] a little at a time" (R. 18), he failed to mention that the "light housework" amounted to a "small amount of dishes" and that plaintiff's husband completed what housework she could not. (R. 158). In that same report, plaintiff also wrote:

> The more I walk the worse the pain gets. I am always in pain. But worse the more I move. (R. 157);
> The pain will wake me up a couple of times a day sometime [sic] not allowing me to sleep. (R. 158);
> Able to dress self, just takes a little bit due to pain. (R. 158);
> Have to shower, it's hard to get out of tub. (R. 158);
> Unable to bend over to shave leg for very long. (R. 158);
> [Regarding preparing meals] Sometime preparing small stuff. Husband cook [sic] most of the meals. (R. 159);
> [Regarding household chores] No outside, cleaning laundry, dishes [How long it takes to perform tasks and how often are they done?] 2 or 3 times a week, it take [sic] twice as long. (R. 159);
> I can only take 10 to 15 steps before the pain really starts. (R. 162);
> I have to have help getting in cars, and the most upsetting thing for me is I can't even lift my 1 ½ old [sic] grandson. I stay in constant pain all the time. (R. 164).

(R. 157-64).

In addition, plaintiff completed two "Disability Report – Appeals" forms, one on February 25, 2011, and one on April 27, 2011, detailing increased pain. (R. 143-47, 150-54). She noted on the February 25 appeals report that her pain had increased significantly, leaving her

6

unable to cook, clean, wash dishes, or do laundry. She said she needed help to walk most of the day. (R. 145). On the April 27 appeals report, plaintiff reported "[i]ncreased weakness in legs causing increase in falls," and "[i]ncreased headaches and difficulty concentrating" as changes in her condition. She also reported needing a cane to walk, recommended by Dr. Fesler. (R. 150, 202). The ALJ did not discuss any of this information.

The ALJ appears to have used only selective portions of the Function Report and Disability Report, ignoring those portions that did not support his credibility determination. Doing so is error. See Sisco, 10 F.3d at 743 (an ALJ may not take "testimony out of context and selectively acknowledge[] parts of [a claimant's] statements while leaving important segments out.").

The ALJ also relied on plaintiff's collection of unemployment for the last two quarters of 2010. Ordinarily, a person does not qualify for unemployment benefits unless that person certifies that he or she is able and available for full-time work. However, plaintiff points out in her reply brief that she received unemployment benefits under Kansas law. (Dkt. 21 at 4). Kansas unemployment statute 44-706(a)(1) states that an individual who "was forced to leave work because of illness or injury upon the advice of a licensed and practicing health care provider" is not disqualified from receiving unemployment benefits. K.S.A. 44-706(a)(1).

The ALJ further attempted to discredit plaintiff by stating that she visited Dr. Fesler infrequently. (R. 17). However, a review of the medical records shows that plaintiff consistently complained of pain to Dr. Fesler and several other doctors, and she eventually tested positive for 18 out of 18 tender points for fibromyalgia. (R. 211-12, 217, 219-18, 220-21, 222-23, 228, 229, 230, 244-46, 250, 251, 275-76, 282-85; 286-87, 288-89, 290-91, 292-94, 297). Plaintiff's primary care physician received plaintiff's records from every doctor that she visited; therefore,

7

he had a well-rounded picture of her pain. Dr. Fesler placed plaintiff on several different pain medications (R. 286), but the ALJ failed to discuss this fact.

Dr. Fesler also placed several restrictions on plaintiff's functional ability, including limited walking, sitting, and lifting. (R. 283, 286, 287, 288). Yet, the ALJ stated that "the claimant's treating physicians did not place any functional restrictions on her activities that would preclude light work activity with the previously mentioned restrictions." (R. 19). Clearly, this statement is error. (R. 283, 286, 287, 288). Accordingly, the Court finds the issue of credibility must be remanded to the ALJ for a proper analysis.

**Medical Source Opinions**

In light of the Court's decision on credibility, the ALJ's treatment of the medical source opinions will not be addressed. However, it is worth noting that the ALJ relied on a Physical RFC form completed by Nancy Armstrong, M.D. on January 13, 2011, to support an RFC for light work. (R. 19). The ALJ's reliance notwithstanding, Dr. Armstrong's assessment found that plaintiff could perform only sedentary work. (R. 266-73, 274).

## CONCLUSION

For the foregoing reasons, the ALJ's decision finding plaintiff not disabled is **REVERSED and REMANDED** for further proceedings. Specifically, the ALJ should reevaluate plaintiff's credibility in light of the Luna factors and reconsider any other aspects of the Decision as appropriate.

SO ORDERED this 11th day of February, 2015.

_____
T. Lane Wilson
United States Magistrate Judge